John H. CROCKETT, Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT, Respondent.

Appeal No. 84-1100.

United States Court of Appeals, Federal Circuit.

Feb. 11, 1986.

---

Arthur E. Strout of Strout, Payson, Pellicani, Cloutier, Hokkanen, Strong & Levine, Rockland, Me., for petitioner.

Mary Mitchelson, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for respondent. With her on brief were

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, and Thomas W. Peterson, Atty.

Before FRIEDMAN, RICH and NIES, Circuit Judges.

NIES, Circuit Judge.

The Merit Systems Protection Board in its final decision in Case No. BN08318310102 sustained the Office of Personnel Management's determination that because John H. Crockett's earnings in each of two succeeding calendar years exceeded 80% of the current annual salary of the postal service position he occupied before his disability retirement, his disability annuity should terminate in accordance with 5 U.S.C. § 8337(d). We affirm.

### I.

The facts in this case are not disputed. The parties disagree only on the interpretation of the restoration of earning capacity provision in the disability retirement statute, 5 U.S.C. § 8337(d) (1966).[1] This court has jurisdiction over the appeal under 28 U.S.C. § 1295(a)(9) (1982); 5 U.S.C. § 7703(b)(1) (1982). *See Lindahl v. Office of Personnel Management,* —— U.S. ——, 105 S.Ct. 1620, 1628, 84 L.Ed.2d 674 (1985).

### II.

Prior to December 1, 1979, Mr. Crockett was employed part-time, i.e., 15 hours per week, as a Clerk, level PS–5, step 12, at the Rockland, Maine, Post Office. Effective that date, Mr. Crockett retired with a disability retirement annuity, as provided in 5 U.S.C. § 8337, on the basis of a back injury. His continued disability is not in dispute here. While he was employed with the postal service, Mr. Crockett concurrently worked as a bookkeeper. Following his disability retirement from the postal service, Mr. Crockett continued with his bookkeeping jobs, earning $15,525 in 1980 and $8,650 in 1981.[2]

Based upon the dollar amount of Mr. Crockett's earnings in 1980 and 1981, the Office of Personnel Management (OPM) cancelled Mr. Crockett's disability retirement annuity. OPM determined that Mr. Crockett's earning capacity had been restored within the meaning of 5 U.S.C. § 8337(d) to the point that his benefits must be terminated. Section 8337(d) provides, in pertinent part:

> If an annuitant receiving disability retirement annuity from the Fund, before becoming 60 years of age, is restored to an earning capacity fairly comparable to the current rate of pay of the position occupied at the time of retirement, payment of the annuity terminates on reemployment by the Government or 1 year after the end of the calender year in which earning capacity is so restored, whichever is earlier. *Earning capacity is deemed restored if in each of 2 succeeding calendar years the income of the annuitant from wages or self-employment or both equals at least 80 percent of the current rate of pay of the position occupied immediately before retirement.* [Emphasis added.]

OPM determined that had Mr. Crockett been employed in his former position in 1980 and 1981, his annual salary would have been $7,854 in 1980 and $8,372 in 1981. Taking 80% of each of those yearly rates of pay, OPM calculated the statutory limitation on his earnings for 1980 and 1981 at $6,283 and $6,698, respectively. Because Mr. Crockett's income for each of those years exceeded those 80% figures, his benefits were terminated, effective December 31, 1982. Mr. Crockett sought review by the Merit Systems Protection Board (MSPB or board), which sustained OPM's decision. This petition for review followed.

---

1. A 1982 amendment to the statute reduced the time period over which an annuitant's earnings are evaluated to determine whether earning capacity has been "restored" from "each of 2 succeeding calendar years" to "any calendar year." That amendment does not apply to this case.

2. These figures apparently were the amounts reported as taxable income. We note that a business loss was taken in one year against total earnings. Mr. Crockett worked regularly for a company as well as freelance, but we do not know the total hours he worked.

### III.

Mr. Crockett argues that OPM and the board erred by comparing his "full-time" earnings in 1980 and 1981 with what would have been his part-time wages had he remained in the postal service. It was inevitable, he says, that his "full-time" earnings would exceed 80% of the earnings from a 15 hour per week part-time position. Per Mr. Crockett, the statute was violated because the comparison was not properly made between the "rate of pay" for his current work and that of his former position.

Mr. Crockett first argues that the amount of the income he earned in 1980 and 1981 must be reduced in making the comparison on a rate of pay basis. Mr. Crockett would take his actual earnings in 1980 and 1981, $15,525 and $8,650, respectively, and multiply them by .375 which is the proportional amount he worked as a postal worker compared to a full-time employee. This calculation, per Mr. Crockett, puts his actual income on a "rate of pay" basis and results in comparison figures for 1980 and 1981 of $5,821.87 and $3,243.75, respectively. So calculated, Mr. Crockett's "income" for each of the years 1980 and 1981 would be less than the corresponding 80% statutory limitations, and he would be entitled to continued disability retirement benefits.[3]

Contrary to Mr. Crockett's analysis, the statute requires a calculation based on *income* from wages or self-employment in the years following retirement, not the *rate of pay* for that work. "Rate of pay" enters into the calculations only in determining the current wages of his former position. In substance, Mr. Crockett urges this court to interpret the statute as requiring comparison on a pro rata basis. To do so, however, would require that we add to the statutory language which speaks of "income" earned "in each of 2 succeeding calendar years," a further requirement that the actual income figure be reduced to the portion of a full-time position worked by the annuitant in his or her former job. However, such a reduction is not specified in the statute, nor can it reasonably be implied. OPM properly used actual income figures for 1980 and 1981.

Alternatively, Mr. Crockett's desired result could be achieved by changing the other side of the calculation, so that his current full-time earnings would be compared to 80% of the yearly rate of pay for his former post office position if he had worked full time. However, the statute requires use of the current rate of pay of the position *occupied* by the annuitant immediately before retirement. Mr. Crockett occupied a part-time, not full-time, position. There was no error in a comparison with the yearly rate of pay for a part-time position since that is the position he occupied.

We conclude that OPM and the MSPB correctly interpreted the statute with respect to the method of calculation, which resulted in Mr. Crockett's loss of benefits. The rationale underlying disability retirement benefits is not compensation simply for having a disability. The disability must be coupled with a substantial inability to earn income. No error having been shown, the decision of the board is *affirmed*.

AFFIRMED.

---

**3.** Assuming, of course, that he continued to satisfy all other statutory prerequisites for receiving a disability retirement annuity.