**Joseph P. ROMAN, Petitioner,**

v.

**CENTRAL INTELLIGENCE AGENCY, Respondent.**

No. 01–3372.

United States Court of Appeals, Federal Circuit.

DECIDED: July 29, 2002.

Joseph P. Roman, of Herndon, Virginia, pro se.

Matthew P. Reed, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for respondent. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Franklin E. White, Jr., Assistant Director. Of counsel was Nancy M. Olson, Attorney, Office of the General Counsel, Central Intelligence Agency, of Washington, DC.

Before CLEVENGER, BRYSON, and PROST, Circuit Judges.

BRYSON, Circuit Judge.

Petitioner Joseph P. Roman seeks review of a decision of the Merit Systems Protection Board upholding the method by which the Central Intelligence Agency computed his survivor annuity under the Federal Employees' Retirement System ("FERS"). Because the agency misapplied the relevant statute and regulations, we reverse.

I

Mr. Roman's wife, Laurie C. Roman, began work at the CIA as a contract officer on August 10, 1986, at which time she became a participant in FERS. Mrs. Roman worked at the agency full time until August 17, 1992, when she began a period of leave without pay ("LWOP") to care for her newborn daughter. In July 1993, Mrs. Roman was diagnosed with non-Hodgkin's lymphoma. On August 15, 1993, she returned to work, but on a part-time basis. For the next two years, she worked 16 hours per week, or 32 hours per 80–hour pay period, until her illness forced her to take disability retirement on August 30, 1995. Mrs. Roman died shortly thereafter.

Because Mr. Roman is the surviving spouse of a federal disability annuitant, he is entitled to a survivor annuity, the amount of which is calculated according to a statutory formula. The statutory scheme that governs the calculation of the survivor annuity is complex and requires some explanation.

The surviving spouse of a disability annuitant receives an annuity equal to 50 percent of the value of the annuitant's annuity as of the day before the annuitant's death. 5 U.S.C. § 8442(g)(1), (2)(A). The value of Mrs. Roman's annuity as of the day before her death is determined by multiplying her "total service" by a percentage of her "average pay," *id.* § 8415(a), and then, because some of her service was part time, by multiplying that product by a "proration factor," *id.* § 8415(e)(1)(B); 5 C.F.R. § 842.407.

Mrs. Roman's total service began with a six-year period of full-time employment, for which she received full service credit. Following that period, she had a one-year period of LWOP. She did not receive service credit for that entire period, however, because an employee is entitled to no more than six months of service credit for LWOP during any calendar year. 5 U.S.C. § 8411(d). Mrs. Roman also received credit toward her period of total service for her two years of part-time service following her period of LWOP. By the time of her retirement, Mrs. Roman had eight years and 11 months of total service.

When a disability annuitant dies before reaching age 62, the value of the annuitant's annuity is calculated based on the annuitant's actual service plus a constructive period of service (which we refer to as

"imputed service") consisting of the period between the annuitant's retirement and the sixty-second anniversary of the annuitant's birth. 5 U.S.C. §§ 8442(g)(2)(B)(ii)(II), 8452(b)(2)(B). In Mrs. Roman's case, the period of imputed service totaled 30 years and 3 months. For purposes of determining the value of her annuity, Mrs. Roman's total service at the time of her death was therefore deemed to be 39 years and 2 months. Because Mrs. Roman's service included part-time work, however, the value of her annuity was reduced by applying a proration factor. The statute that sets out the method for calculating the proration factor, 5 U.S.C. § 8415(e)(1)(B), states:

> [T]he benefit so computed shall then be multiplied by a fraction equal to the ratio which the employee's actual service, as determined by prorating the employee's total service to reflect the service that was performed on a part-time basis, bears to the total service that would be creditable for the employee if all of the service had been performed on a full-time basis.

The dispute in this case is over the manner in which the proration fraction is determined. In particular, the dispute concerns the way the CIA treated Mrs. Roman's post-retirement period of imputed service in calculating the proration factor.[1]

The proration factor is expressed as a fraction. For the denominator, the CIA used the total number of hours that Mrs. Roman would have worked if she had worked full time for 39 years and 2 months. For the numerator, the agency added the number of hours Mrs. Roman actually worked plus a projected number of hours corresponding to the allowable portion of Mrs. Roman's LWOP period and the imputed service period between her retirement and the sixty-second anniversary of her birth. The agency determined the projected number of hours for Mrs. Roman's allowable LWOP period and for the period of imputed service following her retirement based on her work status immediately preceding each of those periods. Because Mrs. Roman was working full time before taking LWOP, the agency credited her with full-time status during her allowable LWOP period. However, because Mrs. Roman was working only 32 hours out of a possible 80 hours per pay period prior to her retirement, the agency credited her with only 32 hours per pay period for the lengthy period of imputed service following her retirement.

Based on that methodology, the CIA derived a proration factor of 0.50 for use in calculating the value of Mrs. Roman's annuity. That meant that Mr. Roman's survivor annuity was 50 percent of what it would have been if his wife's actual service had all been full time.

Mr. Roman took issue with the manner in which the CIA prorated his wife's years of service. In particular, he argued that the agency should not have treated the 30 year and 3 month period of imputed service as if Mrs. Roman had continued to work part time at 16 hours per week for that entire period. Instead, he argued that the agency should not have taken the period of imputed service into account in either the numerator or the denominator of the proration fraction. Under Mr. Roman's methodology, the proration factor for his wife's years of service would have been 0.86, and his survivor annuity would have been considerably larger than under the agency's calculation.

The CIA rejected Mr. Roman's arguments and stood by the method it used to

---

1. Pursuant to 5 U.S.C. § 8461(j), the determination of the amount of Mr. Roman's annuity was made by the CIA, not by the Office of Personnel Management ("OPM"), which is responsible for making such determinations for most federal employees and their survivors.

determine the proration factor. Mr. Roman appealed to the Merit Systems Protection Board. The administrative judge assigned to the case issued an opinion affirming the CIA's decision, and the full Board affirmed the administrative judge's decision. Mr. Roman then petitioned for review by this court.

## II

### A

Section 8415(e)(1)(B) provides that the proration factor is a function of "actual service" and "total service." For situations in which an employee has some part-time service but no imputed service, the computation described in 5 U.S.C. § 8415(e)(1)(B) is straightforward: The numerator of the proration fraction consists of the employee's actual service, which is derived by prorating the employee's total service to reflect the service that was performed on a part-time basis. That is, if the employee worked full time for six years and half time for six years, the employee would have nine years of actual service. The denominator consists of the total service that would be creditable if all of the employee's service had been full time. In the example given above, the denominator would be 12 years, i.e., the employee's period of total service if all 12 years had been full time.

The difficulty in this case is that the period of 39 years and 2 months that was used to calculate the value of Mrs. Roman's annuity included two periods in which she did not work—the 11 months of allowable LWOP and the 30 years and 3 months of imputed service following her retirement.

Under the CIA's interpretation of the statutory scheme, the agency was required to put the entire period of 39 years and 2 months in the denominator of the proration fraction, and it was required to put some period of imputed service in the numerator. Because the CIA interprets section 8415(e)(1)(B) as being silent on the method of prorating the period of LWOP and imputed service, it contends that it was permissible to credit those periods of service in some reasonable way, such as by basing the credit for each of those periods on the employee's work status (i.e., full time or part time) immediately preceding the period of LWOP or imputed service, respectively.

Mr. Roman agrees that the CIA properly treated his wife's period of allowable LWOP by including it in both in numerator and the denominator of the proration factor and not prorating it. Mr. Roman disagrees, however, with the manner in which the agency treated his wife's post-retirement period of imputed service. As to that period, Mr. Roman contends that the CIA misapplied the governing statute and regulations when it prorated that entire period as if Mrs. Roman had continued to work at the part-time rate of 16 hours per week that she had worked in the two years prior to her retirement. The reason the statute is silent on how to assign hours for imputed service, Mr. Roman argues, is that imputed service is not part of the proration calculation at all, and the period of imputed service should not be included in either the numerator or the denominator of the proration fraction. According to Mr. Roman, the numerator of the proration fraction in Mrs. Roman's case should contain the number of hours of creditable full-time service for approximately seven years (including the period of allowable LWOP) and the number of hours of creditable part-time service for two years, at the rate of 32 hours per pay period; the denominator should contain the number of hours a full-time employee would have worked during those same nine years.

Although the language of the pertinent statutory provisions could certainly

be clearer, we conclude that the statute supports Mr. Roman's theory of the case, i.e., that the "total service" referred to in section 8415(e)(1)(B) does not include the period of imputed service for which Mrs. Roman was credited under sections 8442 and 8452. The term "total service," as used in section 8415, means the total length of all periods of an employee's service that is "creditable" under 5 U.S.C. § 8411. *See id.* § 8411(a)(1). Section 8411 defines creditable service to include both actual service, *see id.* § 8411(b), and LWOP, *see id.* § 8411(d), but does not include imputed service.

The CIA argues that the term "total service," as used in section 8415(e)(1)(B), must include the post-retirement period of imputed service, because sections 8442(g)(2)(B)(ii)(II) and 8452(b)(2)(B)(i) direct that in computing the amount of an annuitant's annuity under those provisions, any applicable period of imputed service must be added to the amount of the annuitant's creditable service. Those provisions contemplate that the amount of an annuity will be computed by adding the period of imputed service to the period of total service set forth in section 8415(a), which provides that the amount of the annuity is a function of the employee's total service and average pay. Sections 8442 and 8452 do not, however, expressly provide that the addition of imputed service to the period of creditable service applies to the computation of the proration factor in section 8415(e). And, as we explain below, adding imputed service to total service in section 8415(e) would produce an unreasonable result that Congress could not have intended.

Section 8415(e)(1)(B) provides that the numerator of the proration fraction consists of the employee's "actual service," which is determined "by prorating the employee's total service to reflect the service that was performed on a part-time basis."

Imputed service is not "service that was performed on a part-time basis." Therefore, if imputed service is included within the meaning of "total service" in section 8415(e)(1)(B) at all, it must be included on a non-prorated basis. Yet treating imputed service as actual full-time service for purposes of computing the proration factor would lead to an exceptionally high value for the proration factor, a result that neither party supports and that is clearly at odds with the purpose underlying the statute.

The point can be illustrated by using the example given above. Suppose an employee, after working full time for six years and half time for six years, dies shortly after taking disability retirement and is credited with 30 years of imputed service. In that event, the numerator of the proration fraction, i.e., the "actual service" determined by prorating 42 years of total service to reflect the six years of part-time service, would be 39 years. The denominator would be 42 years, which would result in a proration fraction of 39/42, or 0.93. That would be an extraordinarily high proration fraction for an employee who spent half of her career working half time, and it would be a much higher fraction than the proration fraction that would be produced by either Mr. Roman's methodology (9/12, or 0.75) or the CIA's methodology (24/42, or 0.57). That construction of the statute would also give the term "actual service" an entirely artificial meaning, as opposed to the far more natural meaning that the term would have under Mr. Roman's construction.

Because of that anomalous result, and because neither section 8415 nor section 8411 contains any reference to imputed or projected service, we conclude that "total service" in section 8415(e)(1)(B) refers only to service creditable under section 8411. That construction leads to the conclusion that periods of imputed service are not

taken into account at all in calculating the proration fraction, and that such periods are not added, either in full or in part, to either the numerator or the denominator of the proration fraction. Accordingly, although the pathway through the statutory thicket is not easy to negotiate, we are convinced that, contrary to the CIA's position, the agency was not required to account for Mrs. Roman's period of imputed service in calculating her proration factor, and thus was not required to assign an artificial part-time or full-time designation to that period.

### B

While the statutory language is somewhat opaque, the OPM regulations that implement the statute make clear that imputed service is not prorated. Like the statute, the regulations provide that the "annuity of an employee whose service includes part-time service" is to be computed using a "proration factor." 5 C.F.R. § 842.407. The regulations then set forth the method of calculating the proration factor, as follows:

In this subpart—

*Full-time service* means any actual service in which the employee is scheduled to work the number of hours and days required by the administrative workweek for his or her grade or class (normally 40 hours).

*Part-time service* means any actual service performed on a less than full-time basis, by an individual whose appointment describes a regularly scheduled tour of duty, and any period of time credited as nonpay status time under 5 U.S.C. 8411(d), that follows a period of part-time service without any intervening period of actual service other than part-time service.

*Proration factor* means a fraction expressed as a percentage rounded to the nearest percent. The numerator is the sum of the number of hours the employee actually worked during part-time service; and the denominator is the sum of the number of hours that a full-time employee would be scheduled to work during the same period of service included in the numerator. If an employee has creditable service in addition to part-time service, such service must be included in the numerator and denominator of the fraction.

5 C.F.R. § 842.402.

Section 842.402 provides that only "part-time service" is prorated. "Part-time service" is defined as "any actual service performed on a less than full-time basis," as well as "any period of time credited as nonpay status time under 5 U.S.C. § 8411(d), that follows a period of part-time service without any intervening period of actual service other than part-time service." The period of service between Mrs. Roman's retirement and the sixty-second anniversary of her birth does not fall into either category: it is not actual service, and it is not nonpay status time under section 8411(d), which deals with LWOP. Because Mrs. Roman's imputed service does not fall within the definition of part-time service, the regulation is clearly contrary to the CIA's theory that imputed service is prorated if the employee worked part time during the period of actual service immediately preceding the period of imputed service.

### C

The CIA argues that it derived its method of determining the proration factor from OPM's *CSRS and FERS Handbook*, and that its interpretation of the statutory scheme should be given deference based on OPM's expertise in addressing the application of federal personnel statutes. An agency's reliance on an internal handbook as a basis for deference to the agency's interpretation of a statutory scheme is not ordinarily entitled to the same weight as

its reliance on a regulation that was promulgated pursuant to statutory authority and following formal notice and comment proceedings. *See United States v. Mead Corp.*, 533 U.S. 218, 230–31, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001); *Christensen v. Harris County*, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). In any event, however, we disagree with the CIA's submission that the cited portion of the OPM handbook supports the methodology that the agency used in this case to calculate the proration factor.

The passage the CIA points to in support of its position is found in a part of the OPM handbook entitled "Computing FERS Annuities That Include Part Time Service." That part of the handbook describes how to compute the FERS proration factor:

1. Compute the actual time worked, and the number of full-time hours that could have been worked, for all periods of civilian and military service creditable under FERS.

Note 1: Include time worked in excess of the scheduled part-time tour of duty, not to exceed full-time credit, in the computation of actual time worked.

Note 2: Include periods of creditable time in a nonpay status in the computation of actual time worked. The "actual time worked" during nonpay status is based on the tour of duty in effect immediately before entry into the nonpay status.

OPM, *CSRS and FERS Handbook* § 55B2.1–1 (Apr.1998).

The CIA cites Note 2 as supporting its computation of the proration factor. That interpretation of the handbook, however, is

premised on the assumption that the period of service imputed to a disability annuitant who dies prior to reaching age 62 is "creditable time in a nonpay status."

■ The flaw in that argument is that the term "nonpay status" is applied in the federal personnel system to refer to persons who have the status of employees, but who are not in "pay status" at the time, such as employees who are on LWOP or furlough. *See, e.g.*, 5 C.F.R. § 842.402; *CSRS and FERS Handbook* § 50A2.1–2; OPM, *Guide to Processing Personnel Actions* 15–3 (updated Dec. 31, 1998). The CIA cites no authority for the proposition that the term "nonpay status" refers to a person who is no longer an employee.

Rather than supporting the CIA's argument, the cited portion of the handbook simply restates the principle from 5 C.F.R. § 842.402 that a period of nonpay status time under section 8411(d) is treated as part-time service if it immediately follows a period of actual part-time service. Because Mrs. Roman's period of imputed service is not "creditable time in a nonpay status," Note 2 does not address the question whether Mrs. Roman's 30 years and 3 months of post-retirement imputed service should be treated as part-time service. The OPM handbook therefore provides no support for the CIA's argument that Mrs. Roman's imputed service period must be prorated in accordance with the part-time schedule that she worked during the two-year period immediately preceding her retirement.[2]

### D

Mr. Roman's proposed methodology for calculating the proration factor is clearly

---

[2] Because Mr. Roman and the CIA do not disagree about the proper treatment of Mrs. Roman's LWOP period, it is not necessary for us to address the question of how that period should be treated in computing the proration factor. It is enough to note that there is no

force to the CIA's argument that Mr. Roman's method of computing the proration factor is inconsistent because he argues for including one period in which Mrs. Roman did not actually work-the period of allowable LWOP-while simultaneously arguing against the in-

more consistent with the policies Congress was attempting to promote than is the methodology proposed by the CIA. When FERS was created to replace the Civil Service Retirement System, one of Congress's goals was to eliminate the penalties associated with switching from full-time to part-time work for employees nearing retirement. In addition, Congress intended for an annuity computed under the proration factor to accurately reflect the amount of the annuitant's service. S.Rep. No. 99–166, at 44 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1405, 1449. Adopting the CIA's reading of the statute and regulation, however, would create situations in which neither of those policies would be promoted.

A hypothetical case will illustrate the effect of the CIA's methodology on the goal of computing annuities according to the amount of the annuitant's service. Consider an employee who begins working under FERS at age 22. The employee works half time for ten years before converting to full-time status. The day following his reassignment to full-time service, the employee becomes disabled and takes disability retirement. Shortly after retiring, the employee dies. Under the CIA's method of calculating the proration factor, the employee would be credited with 30 years of full-time imputed service and 5 years of actual service (10 years at half time) out of a possible 40 years of service. Accordingly, the employee's proration factor would be 35/40, or 0.88.

Suppose that a second employee also begins working under FERS at age 22, but works full time for ten years before converting to half-time status. The day following his reassignment to half-time status, the employee becomes disabled and takes disability retirement. The employee dies shortly thereafter. Because the employee was working only half time at the time of retirement, the CIA's methodology would result in the employee's 30 years of imputed service being prorated at 50 percent. The employee would therefore be credited with 15 years of imputed service and 10 years of actual service out of a possible 40 years of service, for a proration factor of 25/40, or 0.63. The value of the first employee's annuity would thus be much greater than the value of the second employee's annuity, even though the first employee had only half the actual service of the second employee.

If the proration factor were based on actual service, however, the first and second employees in the example above would have proration factors of 1.0 and 0.50, respectively, which precisely reflects the respective actual service of the two employees. It seems clear that that methodology is more consistent with Congress's purpose in creating the statutory proration scheme, as it makes the value of the employee's annuity turn on the amount of the employee's actual service, rather than on the nature of the service the employee happened to be performing immediately before he became disabled.

The CIA's methodology is also at odds with Congress's goal of not penalizing employees who convert to part-time service before retirement. To demonstrate that point, it is not necessary to resort to a hypothetical example; the facts of this

---

clusion of another such period-his wife's imputed service between the date of her retirement and the sixty-second anniversary of her birth. We see no inconsistency in Mr. Roman's position. As we have interpreted section 8415(e)(1)(B), "total service" refers to service creditable under section 8411. That

statute includes LWOP but not imputed service such as the 30 years and 3 months between Mrs. Roman's retirement and the sixty-second anniversary of her birth. Accordingly, there is a statutory basis for arguing that LWOP should be treated differently from imputed service.

case illustrate the point well. Under the CIA's methodology, Mrs. Roman's decision to convert to part-time service during the two-year period prior to her retirement resulted in reducing the value of her annuity by half. Under Mr. Roman's methodology, by contrast, Mrs. Roman's conversion to part-time service would have had a far less substantial effect. The CIA's methodology would thus impose a dramatic penalty on employees such as those who, despite the development of illness or physical problems, attempt to work part time for a period before ultimately taking disability retirement. In light of Congress's desire to ensure equitable treatment for employees converting to part-time service, we think it highly unlikely that Congress would have intended such a result.

### III

For the foregoing reasons, we conclude that the Board's construction of 5 U.S.C. § 8415(e)(1)(B) and 5 C.F.R. § 842.402 is not in accordance with law. Nothing in the language of the statute, the regulation, or OPM's handbook indicates that imputed service is to be used in calculating the proration factor. In addition, the policies underlying the proration of part-time service support that interpretation of the statute, and nothing in the language of OPM's handbook supports the contrary view. We therefore reject the CIA's argument that Mrs. Roman's imputed service should be used in calculating the proration factor and treated as part-time service simply because it was preceded by a period of part-time work. Accordingly, we reverse the Board's order and remand this case to the Board for further proceedings consistent with this opinion.

*REVERSED and REMANDED.*