William K. COOK, Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,
Respondent.

No. 03–3025.

United States Court of Appeals,
Federal Circuit.

DECIDED: March 10, 2003.

Before LOURIE, GAJARSA, and LINN, Circuit Judges.

DECISION

PER CURIAM.

William K. Cook ("Cook") petitions for review of the final decision of the Merit Systems Protection Board ("Board"), af-

firming the decision of the Office of Personnel Management ("OPM") to increase Cook's former spouse's Civil Service Retirement System ("CSRS") survivor annuity benefits based on his re-employed federal service. *Cook v. Office of Pers. Mgmt.*, Docket No. DA–0831–02–0042–I–1, 2002 WL 31126661 (Sept. 25, 2002) (petition for review denied Sep. 25, 2002). Even though the Board analyzed the case under the incorrect model language in the Code of Federal Regulations ("Regulations"), the result from our analysis does not change the outcome. Therefore, this court *affirms.*

## BACKGROUND

Cook retired from federal employment on April 1, 1993. One day before his retirement, he and his wife, Rebecca M. Raybin ("Raybin"), were divorced. A divorce decree and a Qualified Domestic Relations Order ("QDRO") were issued by the District Court of Harris County, Texas. The QDRO granted to Raybin, an intervenor in this action, an interest in Cook's annuity benefits and entitled her to receive a former spouse survivor annuity benefit. Specifically, Paragraph 8 of the QDRO reads:

Under section 8341(h)(1) of Title 5, United States Code, Rebecca M. Raybin is awarded a former spouse survivor annuity under the Civil Service Retirement System. The amount of the former spouse survivor annuity under the Civil Service Retirement System will be equal to 100 percent of the maximum possible survivor annuity.

Cook was subsequently re-employed (his "supplemental service") by the federal government from January 1, 1996 through December 30, 1999. On January 12, 2001, OPM found that Cook was eligible for supplemental annuity. At the same time, OPM adjusted Raybin's apportionment of Cook's annuity and her survivor annuity based on calculations that included Cook's supplemental service. On May 8, 2001, OPM reversed this initial decision, instead calculating the apportionment based solely on his service at retirement on April 1, 1993. In a separate letter dated the same day, OPM awarded Raybin a spouse survivor annuity based on Cook's service at retirement *and* his supplemental service. On September 27, 2001, OPM, in its final decision, found that Raybin was entitled to a full survivor annuity equal to fifty-five percent of Cook's annuity as computed at the time of his retirement, plus any future increases. OPM based this finding on language in Item 7.01.c of the Final Decree of Divorce, which reads:

The Court further finds that under section 8341(h)(1) of title 5, United States Code, Rebecca M. Cook is awarded a former spouse survivor annuity under the Civil Service Retirement System. The amount of the former spouse survivor annuity will be equal to 100 percent of the maximum possible survivor annuity.

This language is nearly identical to Paragraph 8 of the QDRO. OPM noted that since the court order (the Final Divorce Decree and the QDRO) did not restrict the survivor annuity to a portion based on the date of divorce, a "full" survivor annuity for Raybin must be computed based on Cook's service at the time of retirement plus any increases due to the supplemental service. Cook appealed to the Board.

The Administrative Judge ("AJ") in his initial decision dated December 26, 2001, affirmed the OPM decision that Raybin be provided a full survivor annuity as computed at the time of Cook's retirement, plus the supplemental service. Specifically, the AJ found that the QDRO adopted regulatory language that indicated that Raybin

should receive the maximum survivor annuity, equal to what she would have received had the parties not divorced.

Additionally, the AJ cited model language present in the Regulations used for drafting awards of former spouse survivor annuities. The cited paragraph, entitled "Award that continues the pre-divorce survivor annuity benefits," reads:

> Using the following paragraph will award a former spouse survivor annuity equal to the amount that the former spouse would have received if the marriage were never terminated by divorce.
>
> "Under section 8341(h)(1) of title 5, United States Code, [former spouse] is awarded a former spouse survivor annuity under the Civil Service Retirement System in the same amount to which [former spouse] would have been entitled if the divorce had not occurred."

5 C.F.R. § 838, Subpt. I, App. A, ¶ 702 (2002) (hereinafter "Paragraph 702"). The initial decision was made final on September 25, 2002, when the Board denied Cook's petition for review. Cook timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2000).

## DISCUSSION

This court must affirm the Board's decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. *See* 5 U.S.C. § 7703(c) (2000); *Cheeseman v. Office of Pers. Mgmt.*, 791 F.2d 138, 140 (Fed.Cir. 1986).

■ Survivor annuity benefits may be available to the former spouse of a federal employee "if and to the extent expressly provided for ... in the terms of ... any court order or court-approved property settlement." 5 U.S.C. § 8341(h)(1) (2000). The language in the court order providing this survivor annuity must be "clear, definitive, explicit, plain, direct, and unmistakable, not dubious or ambiguous." *Rose v. Office of Pers. Mgmt.*, 84 M.S.P.R. 284, 287 (1999); *see also Holzman v. Office of Pers. Mgmt.*, 62 M.S.P.R. 254, 257 (1994), *aff'd*, 48 F.3d 1237 (Fed.Cir.1995) (Table). The maximum spousal survivor annuity is fifty-five percent of a retiree's self-only annuity. *See* 5 C.F.R. § 831.641 (2002). Title 5 of the Regulations provides model language for use in court orders awarding former spouse survivor annuities. *See* 5 C.F.R. § 838, Subpt. I, App. A (2002). This language ensures that a court order will have the effect that is described, thereby guaranteeing proper survivor annuity calculations and distributions. *See id.*

A close reading of Paragraph 702 of the Regulations and Paragraph 8 of the QDRO reveals the two paragraphs to be dissimilar. Nevertheless, this does not warrant a different result than that found by the AJ. Although his reliance on Paragraph 702 was misplaced, the AJ's analysis of that paragraph was correct. Had Paragraph 8 of the QDRO recited language similar to that contained in Paragraph 702, there would be no question that Raybin would be entitled to a survivor annuity that was based on Cook's service at retirement and his supplemental service. If that were the case, Raybin would be entitled to a survivor annuity equal to the amount she would have received had there been no divorce, which would have been the amount based on both periods of service. *See id.*, ¶ 702.

■ Paragraph 8 of the QDRO, however, mimics the language of a separate model from the Regulations. That paragraph, entitled "Award of a percentage or fraction of the maximum survivor annuity," reads:

> Using the following paragraph will award a former spouse survivor annuity

equal to the stated percentage or fraction of the maximum possible survivor annuity. The stated percentage or fraction may not exceed 100 percent.

"Under section 8341(h)(1) of title 5, United States Code, [former spouse] is awarded a former spouse survivor annuity under the Civil Service Retirement System. The amount of the former spouse survivor annuity will be equal to [insert a percentage or fraction] of the maximum possible survivor annuity."

*Id.*, ¶ 721 (hereinafter "Paragraph 721"). The language of the second paragraph above is the very language recited in Paragraph 8 of the QDRO. Thus, Paragraph 721, not Paragraph 702, is the proper paragraph for the purpose of this appeal. Under Paragraph 721, a former spouse is entitled to a certain percentage of the maximum possible survivor annuity. The interpretation of the phrase "maximum possible survivor annuity" is the true issue on appeal. Cook contends that this annuity is based only on his service until retirement, while OPM asserts that "maximum possible survivor annuity" must include the supplemental service, as anything less would not be the "maximum possible."

The Regulations give guidance regarding what exactly is meant by "maximum possible survivor annuity." "The maximum combined total of all current and former spouse annuities ... payable based on the service of a former employee ... equals 55 percent ... of the rate of the self-only annuity that otherwise would have been paid to the employee...." 5 C.F.R. § 831.641. As Cook's self-only annuity includes both his service at retirement and his supplemental service, it follows that Raybin's survivor annuity must be a certain percentage of the fifty-five percent of the amount based on both periods of service. *See id.* The specific percentage of the maximum possible spouse

annuity recited in the QDRO is 100 percent, thus Raybin's annuity is 100 percent of the fifty-five percent of the survivor annuity. *See* 5 C.F.R. § 838, Subpt. I, App. A, ¶ 721.

Cook places much emphasis on 5 C.F.R. § 837.503 for the proposition that the survivor annuity cannot be based on an amount that includes his supplemental service.

If the reemployed annuitant's annuity, at the time he or she applies for supplemental annuity, is reduced to provide a survivor benefit for a spouse, (*or, for FERS annuitants only, a former spouse*), the supplemental annuity will be reduced by 10 percent, and the survivor annuities increased, if the annuitant was retired under CSRS, by 55 percent of the supplemental annuity, and if the annuitant was retired under FERS, by 50 percent of the supplemental annuity, unless the reemployed annuitant notifies OPM at the time of application that he or she does not wish to have such reductions and increases effected.

5 C.F.R. § 837.503(b)(4) (2002) (emphasis added). This regulation is inapplicable, however, as it applies to *former spouses of FERS annuitants only.* Cook is a CSRS annuitant.

 Cook also argues that the *CSRS and FERS Handbook* indicates that "[a] former spouse's survivor annuity may not be increased by a supplemental annuity." Office of Pers. Mgmt., *CSRS and FERS Handbook* § 100A5.1–2(E) (Apr.1998). Agency interpretations based on an internal handbook, however, are not entitled to the same weight as those based on regulations that have been promulgated pursuant to statutory authority, following formal rulemaking procedures. *See Roman v. Cent. Intelligence Agency,* 297 F.3d 1363, 1368–69 (Fed.Cir.2002). Agency interpre-

tations that are inconsistent with the statute are not controlling. *See Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). We must dismiss Cook's argument because the *CSRS and FERS Handbook* is not entitled to the same deference as a promulgated regulation, and moreover, is inconsistent with the statute.

The language of the QDRO is clear on its face. *See Rose,* 84 M.S.P.R. at 287. Raybin is entitled to "100 percent of the maximum possible survivor annuity." The QDRO does not limit her survivor annuity to any particular dollar amount. The survivor annuity is otherwise not restricted to a portion based on the date of retirement or the date of divorce. Nowhere in the QDRO is it stated explicitly that the award be limited to an amount based solely on Cook's service at retirement. Indeed, no other qualifying language is present in the QDRO. All that is explicitly stated is that "[t]he amount of the former spouse survivor annuity will be equal to 100 percent of the maximum possible survivor annuity." Consequently, under Paragraph 721, Raybin is entitled to a survivor annuity that is calculated based on the Cook's service at retirement and the future increases from his supplemental service. This is the "maximum possible survivor annuity": that amount which includes both periods of service. Anything less could not be the maximum.

It was harmless error for the AJ to affirm OPM's decision based on the language recited in Paragraph 702. We accordingly affirm the Board's decision regarding former spouse survivor annuity.