NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**MARY F. RODRIGUEZ,**
*Petitioner,*

v.

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent.*

---

2011-3035

---

Petition for review of the Merit Systems Protection Board in Case No. DC844E090636-I-1.

---

Decided: April 12, 2011

---

MARY F. RODRIGUEZ, of Cary, North Carolina, pro se.

ELLEN M. LYNCH, Trial Attorney, Commercial Litigation Branch, Civil Division, Classification Unit, United States Department of Justice, Washington, DC, for respondent. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and DEBORAH A. BYNUM, Assistant Director.

---

Before RADER, *Chief Judge*, LINN and O'MALLEY, *Circuit Judges*.

PER CURIAM.

Mary F. Rodriguez ("Rodriquez") appeals the final decision of the Merit Systems Protection Board ("the Board") affirming: (1) the Office of Personnel Management's ("OPM") decision to terminate her disability retirement annuity on grounds that she was restored to earning capacity; and (2) OPM's decision that she was overpaid $7,430.88 in annuity benefits, and was required to repay that amount. *Rodriguez v. Office of Pers. Mgmt.*, No. DC-844E-09-0636-I-1, 2010 MSPB LEXIS 32, *14 (Jan. 6, 2010) ("Initial Decision"); *Rodriguez v. Office of Pers. Mgmt.*, 2010 MSPB LEXIS 5709 (Sept. 30, 2010) ("Final Decision"). For the reasons explained below, we *affirm*.

## BACKGROUND

From September 13, 1998 until September 30, 2006, Rodriguez worked as a Staff Nurse for the Department of Veteran's Affairs ("DVA") in Durham, North Carolina. Although she initially worked as a full-time employee, beginning in April 2000, Rodriguez reduced her schedule to 36 hours per week. On August 22, 2004, she decreased her work schedule to 30 hours per week. Finally, from October 31, 2004 until her retirement on September 30, 2006, Rodriguez worked a part-time schedule of 24 hours per week.

Rodriguez submitted an application for a disability retirement annuity under the Federal Employees Retirement System ("FERS"). By letter dated June 14, 2006, OPM approved her application, and, on September 30, 2006, Rodriguez retired under FERS due to disability.

Under FERS, an employee who retires due to disability can work in the private sector while receiving a dis-

ability annuity benefit, as long as the annuitant's income does not exceed "80 percent of the current rate of pay of the position occupied immediately before retirement." 5 U.S.C. § 8455(a)(2). Although the record is not clear as to its source, it is undisputed that Rodriguez's income for 2006 was $45,479.

On October 31, 2007, OPM sent Rodriguez a letter notifying her that she had received an overpayment of annuity benefits. The letter explained that her earnings in 2006 exceeded 80% of the current salary for the position she held prior to retirement. OPM indicated that she was restored to earning capacity effective July 1, 2007, and therefore was not entitled to the benefits she received between July 1, 2007 and September 30, 2007. This resulted in an overpayment of $7,492, which, after deduction of the life insurance premiums recoverable from other sources, resulted in a net overpayment of $7,430.88. As the government concedes, this initial correspondence regarding overpayment failed to advise Rodriguez of her right to seek reconsideration and her right to seek a waiver.

By letter dated November 9, 2007, OPM notified Rodriguez that she was not entitled to continued disability annuity payments because she was restored to earning capacity. The letter explained that, under FERS, "a disability annuitant who is under age 60 and earns, in any calendar year, at least 80 percent of the current rate of basic pay for the position occupied immediately before retirement is considered to be restored to earning capacity." Because Rodriguez's income for 2006 – $45,479 – exceeded 80% of rate of basic pay on December 31, 2006 for the position she occupied immediately prior to retirement, she was considered restored to earning capacity and was therefore no longer entitled to receive a disability

annuity benefit, "even though [her] medical condition may not have changed."

On March 14, 2008, Rodriguez, through counsel, sought reconsideration of OPM's initial decision. In the request for reconsideration, Rodriguez argued that OPM incorrectly compared her post-retirement earnings to the basic rate of pay for a part-time position when, in fact, the "position she retired from was staff nurse, *not* staff nurse (part-time)." Rodriguez explained that she reduced her schedule to part-time, and eventually had to retire, because she suffers from erosive osteoarthritis in her hands. As such, she argued, OPM should have compared her post-retirement earnings "to the actual pay for the full-time position she would have occupied if her medical condition, which forced her into retirement, had not forced her first to go to part time and *then* to retire." According to Rodriguez, this method of calculation would be "consistent with the policy of the Rehabilitation Act that the employee and the government work together to try to keep the employee at work."

OPM subsequently issued a second notice informing Rodriguez that she received an overpayment of annuity benefits. This time, OPM explained that she had a right to request reconsideration of the overpayment decision or waiver of repayment. Enclosed with the letter was: (1) information regarding the process for requesting a waiver due to financial hardship; (2) a form document entitled "Request for Reconsideration, Waiver, Compromise, Deferral or Repayment Agreement;" and (3) a Financial Resources Questionnaire ("FRQ"), which, if completed, would be used to assess her ability to make repayment. On December 10, 2008, Rodriguez completed the "Request for Reconsideration" form indicating that she sought reconsideration of the overpayment decision.

She did not request a waiver, submit a FRQ, or otherwise indicate that she was unable to make repayment.

On June 1, 2009, OPM issued a reconsideration decision affirming its decision to terminate Rodriguez's disability retirement annuity. In the decision, OPM explained that, as of December 31, 2006, the base salary for a DVA nurse at grade and step AD-02 was $73,800. Because Rodriguez worked 24 hours per week, OPM prorated the full-time base salary of $73,800 to reflect her part-time status, and concluded that her basic pay as of December 31, 2006 would have been $44,280 (60% of $73,800). The statutory 80% limit, as of December 31, 2006, was $35,424 (80% of $44,280 is $35,424). Because Rodriguez's reported income for 2006 was $45,479, she earned more than the 80% limit, and her annuity should have terminated on June 30, 2007. *See* 5 CFR § 844.402(a) ("The disability annuity will terminate on the June 30 after the end of the calendar year in which earning capacity is restored.").

On June 23, 2009, Rodriguez, through counsel, appealed the OPM's final decision to the Board. In her appeal, Rodriguez argued that OPM improperly used her "last salary at DVA to calculate the 80% restoration to earning capacity." According to Rodriguez, OPM "should have used the full salary of [her] regular position," because her last salary at DVA was reduced due to her medical condition.

In an initial decision dated January 6, 2010, the Administrative Judge ("AJ") affirmed OPM's decision to terminate Rodriguez's disability annuity because she was restored to earning capacity. The AJ conducted a hearing, during which Rodriguez testified that "her erosive osteoarthritis made it difficult for her to use her hands, which adversely affected her ability to perform her job

duties." *Initial Decision*, 2010 MSPB LEXIS 32 at \*6-7. She also testified that "her physician recommended that she become a permanent part-time employee, which she did." *Id.* at \*7. Because it was undisputed that Rodriguez was working part-time prior to retirement, the AJ found that "OPM properly determined her base salary and adjusted it to reflect that she occupied a part-time position." *Id.* at \*10.[1] And, because her 2006 earnings ex-

---

[1] During the hearing, Rodriguez testified that she sought accommodation for her medical conditions. *Initial Decision*, 2010 MSPB LEXIS 32 at \*7. In a footnote in his initial decision, the AJ noted that, if the DVA

> improperly documented her status as part time and now certifies an amended individual retirement record to OPM, OPM might be required to reconsider this matter. Moreover, it appears that if the agency placed the appellant in a part-time status as a reasonable accommodation for a disabling condition and provided notice to OPM, a higher rate of basic pay might have been established. *See* 5 C.F.R. § 831.1209(b). In either event, it seems the appellant would be required to obtain further documentation from her former employing agency.

*Initial Decision*, 2010 MSPB LEXIS 32 at \*9 n.3. Section 831.1209 applies to disability retirement under the Civil Service Retirement System ("CSRS"). It provides, in part, that,

> A disability annuitant's income for a calendar year is compared to the gross annual rate of basic pay in effect on December 31 of that year for the position occupied immediately before retirement. The income for most disability annuitants is based on the rate for the grade and step which reflects the total amount of basic pay (both the grade and step and any additional basic pay) in effect on the date of separation from the agency for disability retirement. . . . A higher grade and step will be established if it results from using either the date of

ceeded 80% of the current rate of pay for the position she held immediately prior to retirement, the AJ found that Rodriguez was restored to earning capacity. The AJ further found that Rodriguez was not entitled to a waiver of recovery for the overpayments she received between July 1, 2007 and October 30, 2007, because she: (1) failed to submit evidence that she was without fault and that recovery would be against equity and good conscience; and (2) failed to demonstrate financial hardship.

Rodriguez filed a petition for review, requesting that the full Board reconsider the AJ's initial decision. Specifically, Rodriguez argued that OPM's use of a pro-rated salary, rather than a full-time salary, "penalizes her because of her disability." *Final Decision*, 2010 MSPB LEXIS 5709 at *1-2. She also argued that the AJ failed to "address her argument below that it is the policy of the Rehabilitation Act of 1973 to keep employees at work and unfair to penalize an employee for reducing her work hours." *Id.* at *1. The Board found that Rodriguez failed to either: (1) present new or previously unavailable evidence; or (2) show that the AJ made an error interpreting the law or regulation. Accordingly, the Board denied Rodriguez's petition for review, and the AJ's initial decision became final.

Rodriguez timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

---

application for disability retirement or the date of reasonable accommodation, as adjusted by any increases in basic pay that would have been effected between each respective date and the date of final separation.

§ 831.1209(b)(1). Neither party argued that CSRS, rather than FERS, should have applied, or that OPM should have considered § 831.1209(b) in determining whether Rodriguez was restored to earning capacity.

## STANDARD OF REVIEW

Our review of the Board's decisions is limited. *Hamel v. President's Comm'n on Exec. Exch.*, 987 F.2d 1561, 1564 (Fed. Cir. 1993) ("We review Board decisions under a very narrow standard."). By statute, we must affirm a decision from the Board unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McEntee v. Merit Sys. Prot. Bd.*, 404 F.3d 1320, 1325 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The petitioner bears the burden of establishing any errors in the Board's decision. *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998); *see also Cheeseman v. Office of Pers. Mgmt*, 791 F.2d 138, 140 (Fed. Cir. 1986).

## DISCUSSION

On appeal, Rodriguez argues that the Board erred in affirming OPM's decision to terminate her disability retirement annuity because it: (1) failed to consider certain facts; and (2) applied the wrong law. With respect to the facts, Rodriguez alleges that the Board should have considered the fact that she was working part-time prior to retirement because her disability prevented her from continuing in a full-time position. With respect to the law, Rodriguez argues that the Board should have applied the Rehabilitation Act of 1973. Finally, as to the Board's overpayment decision, Rodriguez submits that she did not realize she needed to request a waiver of recovery of the overpaid amounts.

In response, the government argues that: (1) the Board properly determined that Rodriguez was restored to earning capacity because her post-retirement income exceeded 80% of the basic pay for the part-time position from which she retired; (2) nothing in the language of the relevant FERS statute requires the Board to consider the Rehabilitation Act when determining whether an annuitant is restored to earning capacity; and (3) Rodriguez failed to present any evidence that she was entitled to a waiver of recovery of the overpayment.

For the reasons set forth below, we find the government's arguments well-taken. Because we find no error in the Board's decision, we affirm.

## I.

Under FERS, a disability retirement annuity will terminate when the annuitant is restored to earning capacity. Specifically, 5 U.S.C. § 8455(a)(2) provides, in part, that,

> if an annuitant receiving a disability annuity from the Fund, before becoming 60 years of age, is restored to an earning capacity fairly comparable to the current rate of pay of the position occupied at the time of retirement, payment of the annuity terminates 180 days after the end of the calendar year in which earning capacity is so restored.

Earning capacity is restored if, "in any calendar year the income of the annuitant from wages or self-employment or both equals at least 80 percent of the current rate of pay of the position occupied immediately before retirement." *Id.* OPM's regulation governing restoration of earning capacity provides that:

> A disability annuitant's income for a calendar year is compared to the gross annual rate of basic

pay in effect on December 31 of that year for the position occupied immediately before retirement. The income limitation for most disability annuitants is based on the rate for the grade and step that reflects the total amount of basic pay (both the grade and step and any additional basic pay) in effect on the date of separation from the agency for disability retirement.

5 CFR § 844.402(b)(1).

As the Board recognized in its final decision, neither the FERS statute, 5 U.S.C. § 8455, nor the related OPM regulation, 5 C.F.R. § 844.402, directly address the issue of pro-rating an annuitant's rate of pay for a full-time position to reflect the fact that she worked part-time. In its final decision, however, the Board cited to this court's decision in *Crockett v. Office of Pers. Mgmt.*, 783 F.2d 193, 195 (Fed. Cir. 1986) for the proposition that "the proper comparison [i]s between an appellant's income and the part-time rate of pay in his prior position." *Final Decision*, 2010 MSPB LEXIS 5709 at *3; *see also Initial Decision*, 2010 MSPB 32 at 10 (citing *Crockett* and finding that "OPM properly determined her base salary and adjusted it to reflect that she occupied a part-time position").

In *Crockett*, the annuitant was employed part-time and retired with a disability retirement annuity under the Civil Service Retirement System, 5 U.S.C. § 8337(d) ("CSRS").[2] After retirement, he began working full-time

---

[2]    FERS was created to replace CSRS. *See Roman v. Central Intelligence Agency*, 297 F.3d 1363, 1370 (Fed. Cir. 2002). Both statutes contain identical language regarding restoration to earning capacity in the disability retirement context. *Compare* 5 U.S.C. § 8337(d) ("Earning capacity is deemed restored if in any calendar year the income of the annuitant from wages or self-

in a non-government position, and OPM found that he was restored to earning capacity because his post-retirement income exceeded his pre-retirement salary. *Crockett*, 783 F.2d at 194. The annuitant first argued that OPM erred in comparing his full-time post-retirement income to the salary from his prior part-time government position. According to the annuitant, OPM should have compared the "rate of pay" for his current work with that of his former position. *Id.* at 195. The court dismissed this argument, finding that "the statute requires a calculation based on *income* from wages or self-employment in the years following retirement, not the *rate of pay* for that work. 'Rate of pay' enters into the calculations only in determining the current wages of his former position." *Id.* (emphasis in original). The court emphasized that the CSRS "requires use of the current rate of pay of the position *occupied* by the annuitant immediately before retirement." *Id.* at 195. (emphasis in original). Because the annuitant "occupied a part-time, not full-time position," the court found "no error in a comparison with the yearly rate of pay for a part-time position since that is the position he occupied." *Id.*

---

employment or both equals at least 80 percent of the current rate of pay of the position occupied immediately before retirement") *with* 5 U.S.C. § 8455(a)(2) (same). In *Crockett*, the court cited to an earlier version of § 8337(d), which provided that "[e]arning capacity is deemed re-stored if in each of 2 succeeding calendar years the income of the annuitant from wages or self-employment or both equals at least 80 percent of the current rate of pay of the position occupied immediately before retirement." 783 F.2d at 194 (citing § 8337(d)). Section 8337(d) was amended in 1982 to substitute "any calendar year" for "each of 2 succeeding calendar years." With that amend-ment, the provisions regarding restored earning capacity under § 8337(d) and § 8455(a)(2) are identical.

Applying this court's reasoning from *Crockett*, the Board has affirmed an OPM decision pro-rating an annuitant's base salary to reflect his pre-retirement part-time tour of duty. *See Harvey v. Office of Pers. Mgmt.*, No. CH-0831-07-0143-I-1, 2007 MSPB LEXIS 2358, *3 (Feb. 28, 2007) (applying *Crockett* and finding that, because "the appellant occupied a part-time position, working 40 hours per pay period at the time he retired . . . OPM did not err in using his 40-hour-per-pay-period assignment to determine his rate of basic pay").

Although neither party cites to it, and it is not binding on this court, we recognize that, in a recent Board decision, an AJ found that OPM erred in pro-rating the annuitant's baseline salary due to her temporary part-time schedule. *Dillman v. Office of Pers. Mgmt.*, No. AT-0831-10-0111-I-1, 2010 MSPB LEXIS 3499, *7-8 (Mar. 22, 2010). In *Dillman*, the annuitant, who was employed as a registered nurse, sought and obtained a modified part-time duty schedule during the final months of her employment due to her failing health. *Id.* at *1-2. OPM, applying *Crockett*, pro-rated her annual salary based on her reduced duty schedule, and found that she was restored to earning capacity because her post-retirement income exceeded her part-time pro-rated earnings. *Id.* at *5-6. The AJ reversed, finding that "the statute and regulation both indicate that OPM should look to the rate of pay for the annuitant's position – not her accommodated duty schedule – to determine her current base pay." *Id.* at *5. In reaching this decision, the AJ distinguished *Crockett* on grounds that the annuitant in that case occupied a part-time position prior to retirement, while the annuitant in *Dillman* occupied a full-time position with a temporary part-time accommodated duty schedule. *See id.* at *5-7. The AJ also noted that there is a strong public interest in "encouraging injured and ill individuals

to remain employed and productive as long as possible," and that "OPM's practice of ratcheting down an employee's baseline earning capacity figure due to the employee's medically-reduced duty schedule contravenes this policy by penalizing sick employees who try a part-time duty schedule in a laudable effort to remain in the workforce." *Id.* at *7-8.

While the analysis in *Dillman* has some force, the circumstances here are materially different. Unlike in *Dillman*, where the annuitant was merely on a temporary part-time accommodated duty schedule for a few months prior to retirement, here, it is undisputed that Rodriguez occupied a part-time position for several years prior to retirement. Indeed, in her Informal Brief, Rodriguez concedes that "the position [she] occupied immediately before retirement was part time." Although Rodriguez argues that the Board should have considered the reason she switched from a full-time to a part-time position, she fails to identify any facts in the record that support her assertion that her job status was the result of a medical accommodation. As the AJ noted in his initial decision, moreover, if the DVA

> improperly documented her status as part time and now certifies an amended individual retirement record to OPM, OPM might be required to reconsider this matter. Moreover, it appears that if the agency placed the appellant in a part-time status as a reasonable accommodation for a disabling condition and provided notice to OPM, a higher rate of basic pay might have been established. *See* 5 C.F.R. § 831.1209(b). In either event, it seems the appellant would be required to obtain further documentation from her former employing agency.

*Initial Decision*, 2010 MSPB LEXIS 32 at *9 n.3.

We find that, on the facts before it, the Board correctly looked to the current rate of pay for the "position occupied immediately before retirement." § 8455(a)(2). As this court has previously found, § 8455 "does not provide for any exceptions or waivers in its application. Neither OPM nor the Board has authority to waive statutory requirements or to estop the government from denying benefits as required by law." *Daniel v. Office of Pers. Mgmt.*, 245 Fed. Appx. 969, 971 (Fed. Cir. 2007) (citing *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 416 (1990)). Nothing in the language of this statute requires the Board to investigate *why* the annuitant occupied the position she did prior to retirement. Because it is undisputed that Rodriguez occupied a part-time position at the time she retired, and there is no evidence in the record to support the conclusion that her designation as part-time was inappropriate, the Board did not err in pro-rating her basic pay to reflect her part-time rate of pay before comparing it to her post-retirement income.

## II.

With respect to the applicable law, Rodriguez does not contend that the Board should have ignored § 8455(a) in assessing whether she was restored to earning capacity. Instead, she argues that the Board failed to consider the Rehabilitation Act of 1973 in its application of the FERS statute. Specifically, Rodriguez contends that the Rehabilitation Act should have applied because, "by calculating 80 percent of the current rate of pay using my part time salary, rather than calculating 80 percent of the current rate of pay for a full time position," OPM "is penalizing me for reducing my work hours in an attempt to stay at work."

Rodriguez fails to explain how the Rehabilitation Act is relevant to the question of whether she was restored to earning capacity under FERS, however, and she has not asserted a claim under that Act. The Rehabilitation Act protects federal employees from discrimination based on their disabilities. *See* 29 U.S.C. § 791 *et seq.* Rodriguez has not identified any provision of the Rehabilitation Act that either refers, or specifically applies, to FERS. *See Attmore v. Office of Pers. Mgmt.*, 163 Fed. Appx. 885, 887 (Fed. Cir. 2006) (in a case dealing with OPM's adjustment of retirement benefits, noting that, although the petitioner argued that the Board should have applied the Rehabilitation Act, he failed to explain its relevance to the issue before the court). As the government correctly notes, moreover, Rodriguez has not asserted a disability discrimination claim under the Rehabilitation Act, and, even if she had, it would be beyond the jurisdiction of this court. *See Dedrick v. Office of Pers. Mgmt.*, 573 F.3d 1278, 1280-81 (Fed. Cir. 2009) ("Section 7703 of Title 5 provides for judicial review of decisions of the Board, vesting jurisdiction in this court *except* in "[c]ases of discrimination subject to the provisions of section 7702.").

While it is certainly true that employees should not be penalized for reducing their work schedule in an effort to continue working, the statutory language set forth in § 8455(a)(2) makes it clear that earning capacity is restored if the annuitant's income equals "at least 80 percent of the current rate of pay of the position occupied *immediately* before retirement." § 8455(a)(2) (emphasis added). Because this court is required to follow the statutory and regulatory provisions that apply to disability retirement benefits under FERS, we are unable to disturb the Board's decision.

III.

Turning to the issue of overpayment, the Board found that Rodriguez was not entitled to waiver of recovery, particularly since she failed to present any evidence on the issue to the AJ. We find no error in the Board's analysis.

To be entitled to waiver, an annuitant must show that: (1) she is without fault in creating the overpayment; and (2) recovery of the overpayment would be against equity and good conscience. 5 U.S.C. § 8470(b).[3] Even if an annuitant is not eligible for waiver, he or she is "nevertheless entitled to an adjustment in the recovery schedule if he or she shows that it would cause him or her financial hardship to make payment at the rate scheduled." 5 C.F.R. § 845.301. Financial hardship may exist where an individual "needs substantially all of his or her current income and liquid assets to meet current ordinary and necessary living expenses and liabilities." 5 C.F.R. § 845.304.

The AJ found that collection of the overpayment was not unconscionable because Rodriguez "failed to provide substantial evidence she was without fault or that recovery would be against equity and good conscience." *Initial Decision*, 2010 MSPB LEXIS 32 at *12. The AJ further found that Rodriguez failed to request a change in the repayment schedule due to financial hardship.

---

[3] In the Initial Decision, the AJ incorrectly cites to 5 U.S.C. § 8346(b), which applies to civil service retirement annuities under CSRS. Because this case involves a disability retirement annuity under FERS, the AJ should have cited to 5 U.S.C. § 8470(b), which applies in FERS cases. Because the standards are the same under both retirement systems, the court finds no prejudicial error.

In her Informal Reply Brief, Rodriguez explains that she did not submit a FRQ because she thought it was unnecessary. According to Rodriguez, since she had requested reconsideration of the Board's decision, she did not think she needed to request waiver. As previously indicated, however, OPM sent Rodriguez information detailing her right to request waiver of the overpayment and a form entitled "Request for Reconsideration, Waiver, Compromise, Deferral or Repayment Agreement." The form instructed Rodriguez to "check all that apply and provide all information requested." The form listed several options, including: (1) "I am not able to repay the debt. My completed Financial Resources Questionnaire is enclosed"; (2) "I would like to request that the debt be waived. My completed [FRQ] is enclosed"; (3) "I would like to defer payment of this debt until I become eligible for a benefit administered by the" OPM; and (4) "I request reconsideration." It is undisputed that Rodriguez, who was represented by counsel at the time, checked only the box requesting reconsideration. She neither submitted a FRQ nor provided any other evidence regarding her financial ability to make repayments. Accordingly, there was no basis for the Board to conclude she was entitled to waiver. Nor was there any evidence from which the Board could assess whether she was entitled to an adjustment in the repayment schedule.

Because Rodriguez failed to present any evidence on the issue of financial hardship, we cannot say that the Board erred in affirming OPM's overpayment decision. As the Board noted in its final decision, if Rodriguez "experience[s] any changes in her financial circumstances that affect her ability to meet OPM's repayment schedule, she may make a request to OPM to adjust her payments at that time." *Final Decision*, 2010 MSPB LEXIS 5709 at *4.

CONCLUSION

For the foregoing reasons, the final decision of the Board is affirmed.

**AFFIRMED**

COSTS

No costs.