**Jose CARREON, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

**No. 02–3263.**

United States Court of Appeals, Federal Circuit.

Feb. 28, 2003.

 

Jose Carreon, of San Juan, San Narciso, Philippines, pro se.

Patrick J. Mercurio, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for respondent. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Bryant G. Snee, Assistant Director.

Before NEWMAN, SCHALL, and DYK, Circuit Judges. .

DYK, Circuit Judge.

Jose Carreon petitions for review of the final decision of the Merit Systems Protection Board ("Board"). *Carreon v. Office of Pers. Mgmt.*, No. SE–0831–01–0311–I–1, 2002 WL 832524 (M.S.P.B. Apr.24, 2002) (*"Final Order"*). The Board affirmed a decision of the Office of Personnel Management ("OPM") refusing a request for annuity benefits under the Civil Service Retirement System (CSRS) for failure to meet the statutory eligibility. *Carreon v. Office of Pers. Mgmt.*, No. SE–0831–01–0311–I–1, slip op. at 7 (M.S.P.B. Nov.30, 2001) (*"Initial Decision"*). Because the Board correctly determined that Carreon was not entitled to retirement benefits under CSRS, we affirm.

## BACKGROUND

Carreon, a national of the Republic of the Philippines, was employed by the Department of the Air Force ("Air Force") for all but a few months from August 19, 1945, to September 8, 1956. During a portion of this period, retirement deductions were withheld from his salary. On September 8, 1956, Carreon was separated from his position pursuant to a reduction in force, following which he requested and

received a refund of his retirement contributions. On September 28, 1956, Carreon was rehired by the Air Force under an excepted appointment designated as indefinite. This appointment lasted until January 19, 1976, at which time Carreon retired because of disability.

Carreon sought CSRS annuity benefits, which were denied, because OPM found that he failed to satisfy the statutory requirements under 5 U.S.C. § 8333(b). Carreon appealed to the Board. On November 30, 2001, the administrative judge issued an initial decision affirming the denial of benefits. *Initial Decision* at 1. The administrative judge found that under 5 U.S.C. § 8342(a), any claim to benefits based on service prior to September 8, 1956, was foreclosed by the refund of the retirement contributions, *id.* at 4, and that no benefits were payable for the employment subsequent to September 28, 1956, due to Carreon's status as an alien having an indefinite appointment whose duty station was in a foreign country under 5 C.F.R. § 831.201(b), *id.* at 6.[1] The Initial Decision became the final decision of the Board on April 24, 2002, when the Board denied Carreon's petition for review. *Final Order* at 2. Carreon timely appealed to this court, and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

■ We set aside Board decisions only if found to be 1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; 2) obtained without procedures required by law, rule or regulation having been followed; or 3) unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000). The burden of proof to demonstrate entitlement to retirement benefits rests on the petitioner. *Cheeseman v. Office of Pers. Mgmt.*, 791 F.2d 138, 141 (Fed.Cir.1986).

### I

Entitlement to CSRS annuity benefits requires the employee to have completed at least five years of civilian service, and to have completed at least one year of creditable civilian service subject to CSRA within two years of his separation from service. 5 U.S.C. § 8333(a)-(b) (2000); *Casilang v. Office of Pers. Mgmt.*, 248 F.3d 1381, 1382 (Fed.Cir.2001).

■ During most of an eleven-year period between August 19, 1945, and September 8, 1956, Carreon held civilian positions with the Air Force in the Philippines. During part of that period, retirement deductions were withheld from his salary. We assume, without deciding, that these positions were subject to CSRS coverage. Such service might have entitled Carreon to retirement benefits under 5 U.S.C. § 8333. However, when, pursuant to a reduction in force, Carreon lost his position on September 8, 1956, he requested and received a refund of his retirement contributions. As mandated by statute, "the receipt of the payment of the lump-sum credit by the employee or Member

---

1. "Intermittent alien employees engaged on work outside the continental limits of the United States" are excluded from coverage under Civil Service Retirement Act (CSRA). 5 C.F.R. § 831.201(a)(6) (2002). The exclusions under § 831.201(a) are generally subject to continuity-of-coverage rules under 5 C.F.R. § 831.201(b), which provides for benefits under CSRA when "[e]mployment in an excluded category follows employment subject to

[CSRA] without a break in service or after a separation from service of 3 days or less." 5 C.F.R. § 831.201(b)(1) (2002). The continuity-of-coverage rules, however, do not apply to "[a]n alien employee whose duty station is located in a foreign country." 5 C.F.R. § 831.201(b)(1)(i) (2002). Thus, the exclusions under § 831.201(a) apply to such employees without regard to prior eligibility.

voids all annuity rights under this subchapter based on the service on which the lump-sum credit is based." 5 U.S.C. § 8342(a) (2000). This loss of annuity rights may be cured by a redeposit of the payment with interest, *see* 5 U.S.C. § 8334(d); however, no allegation of redeposit was made here. Any right to annuity benefits based on service prior to September 8, 1956, was eliminated by the receipt of the lump sum payment. 5 U.S.C. § 8342(a) (2000). Thus, the sole issue on appeal is whether Carreon's September 28, 1956, indefinite appointment and subsequent employment until January 17, 1976, meet the statutory requirements.

## II

■ On a number of occasions, we have considered the status of indefinite employees of the federal government serving in the Philippines. In *Rosete v. Office of Personnel Management,* 48 F.3d 514 (Fed. Cir.1995), the court rejected a petitioner's argument that her "excepted indefinite" appointment was not a "temporary or intermittent" appointment excludable from CSRA coverage under 5 U.S.C. § 8347(a), noting that the exclusion "ha[d] been consistently applied ... for more than forty years." *Id.* at 519.

In *Casilang,* 248 F.3d at 1382–83, we addressed the interplay between three executive orders issued during the 1950s that affected the employment of executive branch employees. In November of 1950, Executive Order 10,180 was issued, mandating that all appointments to the executive branch would be nonpermanent and excluding from CSRA coverage nonpermanent employees. *Id.* In May of 1954, Executive Order 10,530 was issued, vesting

the Civil Service Commission ("CSC") with the authority to exclude employees whose tenure was uncertain from CSRA coverage. *Id.* at 1383. Executive Order 10,530 also provided that "[a]ll actions heretofore taken by the President in respect of the matters affected by this order ... shall ... remain in effect until amended, modified, or revoked pursuant to the authority conferred by this order." 19 Fed.Reg. 2709 (May 10, 1954). Finally, in November 1954, Executive Order 10,577 was issued, revoking Executive Order 10,180. *Casilang,* 248 F.3d at 1383. The CSC did not act pursuant to its authority under Executive Order 10,530 until 1956, when it promulgated 5 C.F.R. § 29.2 excluding nonpermanent, indefinite appointments from CSRA coverage. *Id.*

Based on an analysis of the executive orders, this court in *Casilang* rejected the petitioner's argument that when Executive Order 10,577 revoked Executive Order 10,-180, the petitioner's excepted indefinite appointment was "converted" to an appointment subject to CSRA. *Id.* The basis for the petitioner's argument in *Casilang* was that between the issuance of Executive Order 10,577 on May 10, 1954, and the subsequent promulgation of 5 C.F.R. § 29.2 in 1956, indefinite employees were eligible for CSRS. Once an employee became eligible for CSRS benefits, according to the petitioner in *Casilang,* those benefits would not be rescinded due to continuity-of-coverage rules.[2] The court held, however, that Executive Order 10,530 kept the Executive Order 10,180 CSRS exclusion in place and that "Casilang's indefinite, excepted appointment ... remained indefinite, excepted and excluded from the CSRA after the issuance of Executive Or-

2. The continuity-of-coverage rules were changed in 1965 to expressly exclude alien employees stationed in foreign countries, 30 Fed.Reg. 11,209 (Sep. 1, 1965) (codified at 5 C.F.R. § 831.201(b)(1)(i)); however, Casilang retired in 1958, before the issuance of this regulation.

der No. 10,577, through the promulgation of 5 C.F.R. § 29.2, and until his separation in 1958." *Id.*

The primary basis upon which Carreon seeks to distinguish those cases and claim a right to annuity benefits is the so-called "*Austria* exception" based on the concurring opinion in *Austria v. Office of Personnel Management,* 78 M.S.P.R. 396, 397–401 (1998) (Slavet, V.Chair, concurring). The *Austria* decision was issued before our decision in *Casilang.* In that concurring opinion, Vice Chair Slavet addressed the coverage under CSRA of a person appointed to the executive branch after the revocation of Executive Order 10,180 and before the promulgation of 5 C.F.R. § 29.2 in 1956, stating the following:

> [Appellant] began his service after Exec. Order No. 10,180 was revoked (January 23, 1955), and before the Civil Service Commission promulgated the regulatory exclusion of indefinite appointees from CSRS coverage (October 30, 1956). *Thus, at the time of his appointment, [appellant] was in a position covered under the CSRS, since no law, rule, or regulation excluded his position or type of appointment from coverage.* Furthermore, as the appellant correctly argued below and reiterates on review ... the Civil Service Commission's exclusion of indefinite appointees did not operate as to [appellant] when it was promulgated, by virtue of the continuity-of-coverage rule. [Appellant]'s employment in a category excluded from CSRS coverage by the 1956 regulation immediately followed employment in a covered position without a break in service, so he did not lose his CSRS coverage in 1956.

*Id.* at 399–400 (emphasis added). The administrative judge in this case appears to agree with the "*Austria* exception" in stating that "[n]ew indefinite appointments made during that 21–month period may well have been eligible for CSRS coverage." *Initial Decision* at 6 (citing *Austria,* 78 M.S.P.R. at 399–400).[3]

The legal theory underlying the *Austria* exception, however, was laid to rest by this court in *Casilang.* 248 F.3d at 1383. The court addressed the interplay between the cited executive orders and noted that:

> Prior to issuing Executive Order No. 10,577, President Eisenhower issued Executive Order No. 10,530, 19 Fed.Reg. 2709 (May 10, 1954); 3 C.F.R. §§ 189, 193 (1954). That Executive Order vested the United States Civil Service Commission with the authority "to exclude from the operation of the [CSRA] any ... employee ... or group of employees in the executive branch ... whose tenure ... is ... of uncertain duration." Executive Order No. 10,530. It also provided that "[a]ll actions heretofore taken by the President in respect of the matters affected by this order and in force at the time of the issuance of this order ... shall ... remain in effect until amended, modified, or revoked pursuant to the authority conferred by this order." Id. *Thus, Executive Order 10,530 kept in place the exclusion of nonpermanent employees from coverage by the CSRA effected by Executive Order No. 10,180 until the Civil Service Commission promulgated new regulations, which it did in 1956.*

**3.** As noted above, the administrative judge nevertheless rejected the claim for benefits because Carreon had not completed at least one year of creditable civilian service subject to CSRA within two years of his January 17, 1976, separation from service required under

5 U.S.C. § 8333(b). *Initial Decision* at 4–5. The basis for the administrative judge's decision was that Carreon "lost [his CSRS] coverage in 1965 when the continuity-of-coverage rule was modified [to exclude alien employees stationed in foreign countries]." *Id.* at 7.

*Id.* (emphasis added). The underlined passage clearly mandates that nonpermanent employees were excluded from coverage *during the entire period.*

Carreon seeks to distinguish *Casilang* because the petitioner there was appointed on January 25, 1952, before the revocation of Executive Order 10,180, whereas Carreon was appointed in September 1956, after the revocation of Executive Order 10,180. (Pet'r's Br. at 3.) The date of appointment is not relevant. Under our decision in *Casilang,* the exclusion from CSRS coverage was in effect during the entire period, beginning with Executive Order 10,180. Thus, the suggestion by the administrative judge here that new indefinite appointments between the issuance of Executive Order 10,577 (revoking Executive Order 10,180) and before the promulgation of 5 C.F.R. § 29.2 "may well have been eligible for CSRS coverage" is contrary to the law of this circuit. Carreon's entire period of service between September 28, 1956, and January 19, 1976, was excluded from CSRS coverage under a law, rule, or regulation. There simply is no *"Austria* exception." We need not reach the effect of the 1965 regulatory exclusion from continuity-of-coverage.

We have considered Carreon's other arguments and find them to be without merit. In conclusion, the Board did not err in affirming the OPM's denial of Carreon's request for an annuity for failure to meet the eligibility requirements under 5 U.S.C. § 8333(b).

## CONCLUSION

For the foregoing reasons, the decision of the Merit Systems Protection Board is *AFFIRMED.*

## COSTS

No costs.