**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

THOMAS J. WALLEN,
               Appellant,

       v.

OFFICE OF PERSONNEL
   MANAGEMENT,
               Agency.

DOCKET NUMBER
DC-0841-15-0167-I-1

DATE: September 2, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>David Steidle</u>, Esquire, Roanoke, Virginia, for the appellant.

<u>Karla W. Yeakle</u>, Esquire, Washington, D.C., for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which affirmed the reconsideration decision of the Office of Personnel Management (OPM) denying his application for a deferred retirement annuity under the Civil Service Retirement System (CSRS). Generally, we grant petitions such as this

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

one only when:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  Title 5 of the Code of Federal Regulations, section 1201.115  (5 C.F.R. § 1201.115).    After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision.  5 C.F.R. § 1201.113(b).

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2        Effective June 7, 2010, the Patent and Trademark Office (PTO) appointed the appellant to a career-conditional GS-11 Patent Examiner position, subject to completion of a 1-year probationary period.  Initial Appeal File (IAF), Tab 7 at 29.  The appellant resigned from his position effective May 17, 2011, prior to completion of his probationary period.[2]  *Id.* at 32.  On June 25, 2013, the appellant applied for a deferred retirement annuity under CSRS.  *Id.* at 40-41.  On his application, he indicated that he had prior Federal service in 1969 and from

---

[2] According to the appellant, PTO notified him on May 17, 2011, that he would be terminated during his probationary period unless he resigned within 24 hours.  IAF, Tab 7 at 22.

1977 to 1990 and that he previously had filed an application for a refund of his retirement contributions under CSRS.[3] *Id.* at 41.

¶3      In an initial decision dated April 18, 2014, OPM denied the appellant's application for a deferred retirement annuity under CSRS because he was not "covered under CSRS for at least one year ou[t] of the last two years preceding [his] final separation." *Id.* at 37.  On May 17, 2014, the appellant requested reconsideration of OPM's initial decision, *id.* at 8-9, and, on May 29, 2014, he submitted a supplemental pleading, *id.* at 21‑28.  In an October 21, 2014 reconsideration decision, OPM affirmed its initial decision.  *Id*. at 5-7.  OPM explained that the initial decision correctly determined that the appellant was ineligible for a deferred retirement annuity because he had not served in a position covered by CSRS for at least 1 year out of his final 2 years of service prior to separation.  *Id.* at 6.  OPM further found that the appellant was not entitled to an annuity because he had received a refund of his retirement deductions and, moreover, that he was ineligible to make a redeposit of his refunded retirement deductions because he was not currently employed in a Federal position.  *Id.*

¶4      On November 18, 2014, the appellant appealed OPM's reconsideration decision to the Board.[4]  IAF, Tab 1.  In his closing brief, the appellant argued that OPM erred by finding that he did not serve 1 year out of his final 2 years of

---

[3] The appellant's individual retirement record reflects that the Department of the Navy employed him in a civil service position from June 19 to September 19, 1969, and again from August 15, 1977, to August 26, 1978.  IAF, Tab 7 at 47-48.  From August 27, 1978, through December 7, 1985, PTO employed the appellant as a Patent Examiner. *Id.* at 45‑56.  From December 8, 1985, until his resignation effective December 14, 1990, the appellant was employed by the Department of Agriculture.  *Id.* at 44.  In December 1990, the appellant requested a refund of his retirement deductions.  *Id.* at 49.

[4] Although the appellant initially requested a hearing, he subsequently waived his right to one, and the parties agreed to a decision based on the written record.  IAF, Tab 1 at 1, Tab 9 at 1.

service in a position covered by CSRS and that he did not have the right to redeposit his refunded retirement deductions. IAF, Tab 10 at 12‑24. He further argued, for the first time, that the deadline for making a redeposit of his withdrawn retirement contributions should be waived because he received misinformation from PTO regarding the requirement to make a redeposit in order to claim retirement credit for his prior service, thereby depriving him of his entitlement to a deferred retirement annuity. *Id.* at 25-30. The administrative judge provided the appellant notice of his burden of proof to establish that the redeposit deadline should be waived and reopened the record to afford him an opportunity to respond. IAF, Tab 11‑12, 16 at 1-2. The appellant submitted a response. IAF, Tab 17.

¶5 In an initial decision based on the written record, the administrative judge affirmed OPM's reconsideration decision. IAF, Tab 18, Initial Decision (ID). Although the administrative judge found that OPM incorrectly determined that the appellant did not meet the eligibility requirements for a deferred retirement annuity under CSRS, he concluded that OPM correctly determined that the appellant was not entitled to the benefit. ID at 4-11. Specifically, the administrative judge found that the appellant received a refund of his retirement deductions after he left Federal service in 1990, thereby voiding his annuity rights, and that he did not make the requisite redeposit during his subsequent period of Federal employment. *Id.* The administrative judge also found that the appellant was not entitled to a waiver of the deadline for making a redeposit. ID at 12‑14.

¶6 The appellant has filed a petition for review of the initial decision, OPM has responded in opposition to the petition for review, and the appellant has replied to OPM's opposition. Petition for Review (PFR) File, Tabs 1, 4‑5.

<u>The administrative judge correctly determined that the appellant met the eligibility criteria for a retirement annuity under CSRS.</u>

¶7      Eligibility for retirement benefits under CSRS generally requires that the employee demonstrate that he has completed:  (1) at least 5 years of civilian service; and (2) at least 1 year of creditable civilian service covered by CSRS within the last 2 years prior to "any separation from service."  5 U.S.C. § 8333(a)-(b); *Carreon v. Office of Personnel Management*, 321 F.3d 1128, 1130 (Fed. Cir. 2003).  The administrative judge found that the appellant met the first requirement because he completed more than 13 years of creditable service during his continuous employment from August 1977 through December 1990.  ID at 5; IAF, Tab 7 at 44-48.  He also determined that the appellant met the second requirement because he completed at least 1 year of creditable civilian service in a position covered by CSRS within the last 2 years before his separation from service in December 1990.  ID at 5-6.  Thus, although the appellant did not meet the eligibility requirements as to his most recent separation in 2011, the administrative judge found that he did meet the eligibility requirements and was eligible for a retirement annuity based on his separation occurring in 1990.  ID at 7 n.n. 5, 11.

¶8      The parties do not challenge these findings on review, and we discern no basis to disturb them.  PFR File, Tabs 1, 4-5.  Therefore, we agree with the administrative judge that, contrary to the finding in OPM's reconsideration decision, the appellant meets the eligibility criteria for a deferred retirement annuity under CSRS based on his separation from service in 1990.  ID at 4-7.

<u>The administrative judge correctly determined that the appellant was not entitled to a deferred retirement annuity.</u>

¶9      Although the appellant was eligible for a deferred retirement annuity, the administrative judge agreed with OPM's alternate finding that the appellant was not entitled to an annuity because he received a refund of his retirement deductions and did not make the requisite redeposit during his subsequent period of Federal employment from 2010 to 2011.  ID at 7; IAF, Tab 7 at 6.  The

appellant does not dispute these findings on review.  PFR File, Tabs 1, 5.  He argues, however, that the administrative judge erred in finding that he did not qualify for an exception to the redeposit requirement.  PFR File, Tab 1 at 7-10.

¶10        A former Federal employee may elect to receive a lump-sum refund of his previously paid retirement deductions.  5 U.S.C. § 8342(a).  Upon receipt of that payment, the employee "voids all annuity rights . . . based on the service on which the lump-sum credit is based, until the employee . . . is reemployed in the service."  *Id.*  Under 5 U.S.C. § 8334(d)(1), the loss of annuity rights may be cured by an employee's redeposit of the lump-sum payment with interest.  *Carreon*,  321 F.3d  at 1130-31;  *Sanchez  v.  Office  of  Personnel Management*,  47 M.S.P.R.  343,  346‑47  (1991).  In  addition,  5 U.S.C. § 8334(d)(2)(B),  as  implemented  by  5 C.F.R.  § 831.303(c)(1),  allows  certain employees, who are otherwise eligible to receive a nondisability annuity under CSRS, to receive credit for a period of refunded service without making the redeposit.  In such a case, the employee will receive an annuity at a reduced rate.  5 U.S.C. § 8334(d)(2)(B); 5 C.F.R. § 831.303(c)(2).  This exception to the redeposit requirement is available only to:  (1) employees "whose retirement is based on a separation occurring before October 28, 2009, and who [have] not completed payment of a redeposit for refunded deductions based on a period of service that ended before October 1, 1990 . . . provided the nondisability annuity commences after December 1, 1990"; and (2) employees "whose retirement is based on a separation on or after October 28, 2009, and who [have] not completed payment of a redeposit for refunded deductions based on a period of service that ended  before  March 1,  1991."  5 C.F.R.  § 831.303(c)(1)(i)‑(ii);  *see*  5 U.S.C. § 8334(d)(2)(A)(i); *see also* National Defense Authorization Act for Fiscal Year 2010 (NDAA), Pub. L. No. 111-84, § 1902, 123 Stat. 2190, 2615‑2616 (2009) (amending  5 U.S.C.  § 8334(d)(2)(A)(i)  by  replacing  "October 1,  1990"  with "March 1, 1991" effective October 28, 2009).

¶11 The administrative judge found that this exception to the redeposit requirement did not apply to the appellant because his retirement was based on his December 14, 1990 separation, i.e., a separation occurring before October 28, 2009, and the period of service for which he received a refund ended on December 14, 1990, several weeks after the October 1, 1990 deadline. ID at 9-10. Regarding the appellant's argument that he qualified for the exception because his December 14, 1990 separation occurred before the amended deadline date of March 1, 1991, the administrative judge explained that the March 1, 1991 deadline in 5 C.F.R. § 831.303(c)(1)(ii) and 5 U.S.C. § 8334(d)(2)(A)(i) applied only to employees whose entitlement to an annuity was "based on a separation from service" occurring on or after October 28, 2009. ID at 10-11 (quoting NDAA, § 1902(b), 123 Stat. at 2615‑2616). Because the appellant's entitlement to an annuity was based on his separation from service on December 14, 1990, the administrative judge concluded that the 2009 amendment did not affect the appellant's rights under section 8334(d). ID at 10-11. The administrative judge further found that the appellant was not entitled to an annuity "based on his separation from service" in 2011 because he did meet the eligibility requirements of 5 U.S.C. § 8333 for his period of reemployment ending in 2011 but had not redeposited his withdrawn retirement contributions while reemployed. *Id.*

¶12 On review, the appellant argues that the administrative judge erred by relying on 5 C.F.R. § 831.303(c) in interpreting 5 U.S.C. § 8334(d)(2)(A)(i) because the regulation "did not exist in its current form when appellant separated in 2011." PFR File, Tab 1 at 8-9. Thus, he contends that the Board should defer to his "equally valid interpretation" of the statute, which is that the 2009 amendment (replacing the October 1, 1990 deadline for qualifying separations with a March 1, 1991 deadline) applies to "any individual that *separated* on or after the enactment of the Act," regardless of whether the service immediately

preceding that separation meets the eligibility requirements for an annuity under CSRS. *Id.* at 9 (emphasis in original).

¶13    The appellant is correct that, at the time of his separation in 2011, section 831.303(c) did not appear in its current form. *See* 5 C.F.R. § 831.303(c) (2011); *see also* 79 Fed. Reg. 46,618 (Aug. 8, 2014) (subsequently codified at 5 C.F.R. § 831.303(c)). However, the language of the statute itself is clear without reference to the regulations, and we find no support for the appellant's proffered interpretation of the 2009 amendment. As the administrative judge correctly explained, the NDAA for Fiscal Year 2010 amended section 8334(d)(2)(A)(i) by extending the deadline for a qualifying separation from October 1, 1990, to March 1, 1991, and provided that the amendment "shall be effective with respect to any annuity, entitlement to which is based on a separation from service occurring on or after the date of enactment of this Act [October 28, 2009]."[5] NDAA, § 1902(b), 123 Stat. at 2615‑2616. The appellant's interpretation of the amendment is inconsistent with the plain language of the NDAA, which clearly states that the amendment applies only to those whose *entitlement* to an annuity is based on a separation occurring on or after October 28, 2009, not to those who merely separate after that date. *Id*. Further, an employee must have at least 1 year of creditable service in a position covered by CSRS within the last 2 years preceding the separation in order to be "eligible for an annuity . . . based on the separation." 5 U.S.C. § 8333(b). Thus, we agree with the administrative judge that the appellant could only base his entitlement to a retirement annuity under CSRS on his separation from service in

[5] Although the applicability provision of the 2009 amendment was not codified into the text of the section 8334(c), it is codified in the notes of section 8334. 5 U.S.C. § 8334 note. The Board and its reviewing court, without reservation, have applied laws that have been codified in the notes of the U.S. Code. *See, e.g.*, *Brooks v. Department of Homeland Security*, 95 M.S.P.R. 464, ¶ 15 (2004). Moreover, while the U.S. Code is prima facie evidence of the laws contained therein, the Code cannot prevail over the Statutes at Large when the two are inconsistent. *Id.* (citing *United States v. Welden*, 377 U.S. 95, 98 n.4 (1964)).

December 1990, and not on his separation in 2011, because he did not have 1 year of creditable service in a covered position within the last 2 years preceding his 2011 separation.  ID at 6-7; *see* 5 U.S.C. § 8333(b).

¶14        In sum, we find that the administrative judge correctly interpreted amended section 8334(d)(2)(A), and we discern no basis to disturb the administrative judge's finding that the appellant is not entitled to receive a reduced annuity in lieu of making a redeposit pursuant to section 8334(d)(2)(A).

The administrative judge correctly determined that the appellant is not entitled to a waiver of the deadline to redeposit his refunded retirement deductions.

¶15        As stated above, an employee who receives a lump-sum refund of his previously paid retirement deductions voids his annuity rights.  5 U.S.C. § 8342(a).  An employee who received a refund pursuant to 5 U.S.C. § 8342 may, however, be allowed credit for his prior service under 5 U.S.C. § 8334(d)(1) if, "[w]hile subsequently reemployed in a covered position," he redeposits the amount received, with interest.  *Carreon*, 321 F.3d  at 1130-31; *Sanchez*, 47 M.S.P.R. at 346‑47.  Here, the appellant could have, but did not, redeposit his withdrawn retirement contributions, with interest, while reemployed in a covered position, prior to his resignation on May 17, 2011.  IAF, Tab 7 at 32.  Because the appellant is no longer employed in a covered position, OPM cannot accept his request to redeposit the withdrawn funds or grant him a deferred annuity. *See* 5 U.S.C.  § 8334(d)(1)  (stating  that  an  "employee,"  as  defined  by section 8331(1), who has received a refund of retirement deductions may deposit the amount received, with interest, in order to receive credit for the period of service covered by the refund).  The appellant argues, however, that the deadline for making a redeposit, i.e., his last day of employment on May 17, 2011, should be waived.

¶16        As the administrative judge correctly explained below, the Board recognizes three bases for waiving a filing deadline prescribed by statute or regulation: (1) the statute or regulation expressly provides for a waiver under specified

circumstances; (2) an agency's affirmative misconduct precludes enforcement of the deadline under the doctrine of equitable estoppel; and (3) an agency's failure to provide a notice of rights of the applicable filing deadline, where such notice is required by statute or regulation, warrants a waiver of the deadline. IAF, Tab 15 at 11-12; *Perez Peraza v. Office of Personnel Management*, 114 M.S.P.R. 457, ¶ 7 (2010). In the initial decision, the administrative judge found that the appellant had failed to establish any basis for waiver of the redeposit deadline. ID at 12-14. Specifically, he determined that the relevant statutes and regulations did not provide for a waiver under specified circumstances and that the appellant failed to allege that the agency had a statutory or regulatory obligation to provide him with notice pertaining to the redeposit deadline. ID at 12. Further, he determined that the appellant's allegations that PTO misinformed him regarding the redeposit requirement and, in 2010, improperly appointed him as a "career conditional, with no annuity rights" did not establish that the redeposit deadline should be waived under the doctrine of equitable estoppel. ID at 13-14.

¶17    On review, the appellant has not challenged the administrative judge's finding that the first potential basis for waiver does not apply, and we discern no reason to disturb this finding. ID at 12. However, the appellant argues that the administrative judge erred in finding that bases (2) and (3) did not warrant waiver of the filing deadline for making a redeposit. PFR File, Tab 1 at 10-18.

¶18    To prevail on an equitable estoppel claim, the appellant must demonstrate by preponderant evidence that: (1) he reasonably relied on the information provided by the Government officials; and (2) the actions of the relevant government officials constituted "affirmative misconduct." *Perez Peraza*, 114 M.S.P.R. 457, ¶¶ 9, 14. The unintentional, negligent provision of misinformation, however, does not constitute affirmative misconduct. *Id.*, ¶ 10; *Nunes v. Office of Personnel Management*, 111 M.S.P.R. 221, ¶ 19 (2009). Here, the appellant argues on review, as he did below, that the deadline for making a redeposit of his refunded retirement deductions should be waived because he

reasonably and detrimentally relied on misinformation provided by PTO. PFR File, Tab 1 at 13‑15. Specifically, the appellant argues that PTO provided him an employee handbook, which "undeniably states that a rehired employee who left service prior to March 1, 1991, would be paid an annuity regardless of whether [he] completed a redeposit." *Id.*; IAF, Tab 10 at 34. He further argues that "PTO must be assigned full knowledge of the contents of the handbook," and, therefore, "[i]t speaks for itself that the PTO knew, or certainly should have known, the handbook was at a minimum incomplete and . . . inaccurate when applied to the Appellant's situation." PFR File, Tab 1 at 14.

¶19 Although PTO may have been negligent in providing the appellant a document containing incomplete or inaccurate information, we are not persuaded by the appellant's bare assertions that PTO officials knew or should have known that the information in the handbook was incorrect. Absent any, much less preponderant, evidence that PTO officials knowingly and intentionally misinformed the appellant, we discern no basis to disturb the administrative judge's finding that the appellant failed to establish that PTO officials engaged in affirmative misconduct. ID at 10‑11; *see Nunes*, 111 M.S.P.R. 221, ¶ 19 (stating that the unintentional provision of misinformation does not constitute affirmative misconduct).

¶20 The appellant further argues that he is entitled to a waiver on the basis of equitable estoppel because PTO "reinstated him in 2011 as a career conditional employee" rather than reinstating him as a former career employee with tenure status, in violation of 5 C.F.R. § 315.201(c)(4). PFR File, Tab 1 at 10-11, 15-17. He argues that the administrative judge erred in finding that this allegation was irrelevant to the estoppel issue because "[v]iolation of the law is always affirmative misconduct." *Id.* at 10; ID at 13. Moreover, he argues, PTO's violation of section 315.201(c)(4) "affirmatively precluded him from receiving any benefit counseling." PFR File, Tab 1 at 10.

¶21    Pursuant to 5 C.F.R. § 315.401, "an agency *may* appoint by reinstatement to a competitive service position a person who previously was employed under career or career-conditional appointment (or equivalent)." 5 C.F.R. § 315 .401(a) (emphasis added). Such appointments are exempt from the 1-year probationary period if the individual previously satisfied that requirement. 5 C.F.R. § 315.201(c)(4). Although it appears that the appellant may have been eligible for a reinstatement appointment under 5 C.F.R. § 315.401, appointment under the section is permissive, rather than mandatory, and it does not appear from the evidence in the record that he was actually appointed under that legal authority. IAF, Tab 7 at 29-32. To the contrary, the letter confirming the appellant's appointment stated that he was required to complete a 1-year probationary period. *Id.* at 29. Thus, we find no merit to the appellant's argument that PTO violated a regulation, and we agree with the administrative judge that the appellant has failed to establish any affirmative misconduct on the part of PTO as to warrant the application of equitable estoppel.

¶22    Regarding the third potential basis for waiving a statutory or regulatory deadline, the appellant argues that PTO had an obligation to provide him with benefit counseling and notice of the redeposit deadline pursuant to the "OPM regulation" in the "CSRS Handbook," which sets forth an agency's responsibilities when an employee, who is not entitled to an immediate annuity, separates from service. PFR File, Tab 1 at 12-13. Contrary to the appellant's contention, however, the guidelines set forth in OPM's CSRS and Federal Employees' Retirement System (FERS) Handbook are not regulations. *See Roman v. Central Intelligence Agency*, 297 F.3d 1363, 1368‑69 (Fed. Cir. 2002) (referring to OPM's CSRS and FERS Handbook for Personnel and Payroll Offices as "an internal handbook," which, unlike a regulation, was not "promulgated pursuant to statutory authority and following formal notice and comment proceedings"). Thus, PTO's failure to provide the appellant with notice

of his rights and the applicable filing deadline pursuant to guidelines in the CSRS/FERS Handbook provides no basis for waiver of a statutory filing deadline.

¶23    Accordingly, we affirm the initial decision.

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional    information    is    available    at    the    court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website

at   http://www.mspb.gov/probono   for   information   regarding   pro   bono representation for Merit Systems Protection Board appellants before the Federal Circuit.    The  Merit  Systems  Protection  Board  neither  endorses  the  services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:                          _____
                                                          Jennifer Everling
                                                          Acting Clerk of the Board

Washington, D.C.